[Cite as *State v. English*, 2014-Ohio-441.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-03-048 |
| | : | O P I N I O N |
| - vs - | | 2/10/2014 |
| | : | |
| JAMES ENGLISH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-10-1695

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Jeffrey W. Bowling, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, James English, appeals from his convictions in the Butler County Court of Common Pleas of two counts of gross sexual imposition. For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2} On October 24, 2012, appellant was charged under a three-count indictment for separate instances of gross sexual imposition involving different minor females in violation of

R.C. 2907.05(A)(4).

{¶ 3} On March 4, 2013, the same day as the jury trial was set to begin, appellant filed a motion to sever each count in the indictment. The trial court denied appellant's motion and the matter proceeded to trial with the state calling each of the three minor victims in its case-in-chief.

{¶ 4} D.E. testified that she had been seven years old at the time of the sexual contact with appellant. D.E. stated that appellant was an acquaintance of her mother who occasionally came to the house D.E. shared with her mother and her mother's boyfriend. D.E. testified that on May 24, 2012 she was alone with appellant in the downstairs portion of her home. At some point, D.E. went to lie down in a back bedroom because she had been feeling ill. D.E. further testified that a short time later, appellant came into the back bedroom and offered to get her a drink. When appellant returned, D.E. stated that appellant bent down and touched her in the "private" with his finger. After appellant finished touching her, appellant asked D.E. if she was "feeling better." D.E. stated that she did not feel better and asked appellant to leave the room. Appellant left the room and did not return.

{¶ 5} T.M. was the next witness called by the state and she testified as to an incident of sexual contact between herself and appellant that occurred in April or May of 2012. At the time, T.M. was ten years old and had been sleeping on the couch located in her family living room when she was suddenly awakened by a hand that was abruptly pulled out from the inside of her pants. When T.M. awoke, appellant was standing right beside her near the arm of the couch. T.M. testified that appellant had been rubbing her buttocks right before she was awakened by appellant's sudden movement.

{¶ 6} S.M. was the state's third witness to testify and stated that she was 12 years old at the time of the allegations listed in the indictment. According to S.M.'s trial testimony, in May of 2012, S.M. and appellant went to S.M.'s former residence to pick up some laundry for

- 2 -

school.  While the two were alone in the house together, S.M. alleged that appellant gave her a hug, stuck his hand in her pants and then threw her to the ground.  However, on cross-examination, S.M. acknowledged that she had previously told police that she had been successful in preventing appellant from reaching down her pants.

{¶ 7}  At the conclusion of the trial, the jury returned guilty verdicts for the counts of gross sexual imposition committed against the first two victims, D.E. and T.M.  The jury could not come to a unanimous decision regarding the allegations made by the third victim, S.M. Accordingly, the trial court declared a mistrial with regard to the count related to S.M.  That charge was subsequently dismissed by the state.  The trial court ultimately sentenced appellant to a total prison term of eight years.

{¶ 8}  Appellant now appeals his convictions, raising six assignments of error.  For ease of discussion, we will address the assignments of error out of order.

{¶ 9}  Assignment of Error No. 5:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY REFUSING TO SEVER EACH COUNT FOR TRIAL.

{¶ 11} Appellant's fifth assignment of error alleges the trial court improperly denied his motion to sever under Crim.R. 14.  Appellant contends that the cumulative effect of joining all three offenses at trial was unfairly prejudicial.  In essence, appellant argues a jury would not have convicted him in the case at bar without the joinder of all three offenses because the state presented no physical evidence, no eyewitnesses, and no expert testimony to corroborate the victims' testimonies.  We find no merit to this argument.

{¶ 12} The decision to grant or deny a motion to sever is a matter in the trial court's discretion, and therefore, we review this decision under an abuse of discretion standard. *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 35.  An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or

- 3 -

unconscionable. *State v. Rose*, 12th Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 11.

{¶ 13} "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott*, 51 Ohio St.3d 160, 163 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340 (1981). However, a defendant may move to sever offenses that have been properly joined where it appears that joinder would be prejudicial. *Matthews* at ¶ 36.

{¶ 14} To prevail on a claim that the trial court erred in denying a motion to sever, the appellant must demonstrate: "(1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992); *Rose* at ¶ 13.

{¶ 15} "The state may negate a claim of prejudice in one of two ways." *Rose*, 2012-Ohio-5607, at ¶ 14. "The first is through the 'other acts' test, where the 'state must demonstrate it could have introduced evidence of the joined offenses at separate trials, pursuant to the 'other acts' provision of Evid.R. 404(B).'" *Id.*, citing *Lott* at 163. Additionally, under the "joinder test," the state may refute a claim of prejudice by showing "that the evidence of each crime joined at trial is simple and direct." *Id.*, citing *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 76. By demonstrating that the evidence is "simple and direct," the state negates any claims of prejudice and joinder will be proper. *Matthews*, 2013-Ohio-3482, at ¶ 38; *Rose* at ¶ 14.

{¶ 16} The trial court denied appellant's motion to sever based on the following three grounds: (1) because the motion was untimely filed, (2) because the evidence was simple and direct as to each witness, and also (3) because the evidence was admissible under Evid.R. 404. After consideration, we conclude the trial court did not err in denying appellant's

motion to sever.  The trial court had ample grounds to deny that motion.

{¶ 17} We agree with the trial court's finding that appellant's motion to sever was untimely filed.  A motion to sever charges in an indictment is a pretrial motion under Crim.R. 12(C)(5) and is subject to the time limitation contained in Crim. R. 12(D).  *State v. Bell*, 3d Dist. Seneca No. 13-12-39, 2013-Ohio-1299, ¶ 29.  According to Crim. R. 12(D), "[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier."  The failure to file a motion to sever in a timely fashion without any legitimate reason for its delay has routinely been a basis for denial of a motion to sever.  *Bell* at ¶ 29; *State v. Palmer*, 7th Dist. Jefferson No. 04-JE-41, 2006-Ohio-749, ¶ 12; *State v. Montgomery*, 2d Dist. Montgomery No. 22193, 2009-Ohio-1415, ¶ 16-17.  Because the record in this case reflects that appellant filed his motion to sever on the day of trial and did not provide any legitimate reason for its delay, we conclude that the trial court did not abuse its discretion in denying appellant's motion to sever on the basis of timeliness.

{¶ 18} However, even if appellant had timely filed his motion to sever, the trial court would still have had grounds to deny appellant's motion.  First, the evidence presented in this case was simple and direct.  Appellant was charged with three separate instances of gross sexual imposition, each of which occurred in a separate incident against one of the three respective victims, at a different location, and at a different time.  The state presented the testimony of each victim who provided evidence relating to her specific interactions with appellant and recounted the alleged sexual contact giving rise to the allegations.  The remaining witness, Detective Hoover, testified as to his investigation with respect to each alleged instance of misconduct.  The offenses were separately tried and proven by the state.  The testimony produced by the state could be easily segregated by the jury and would be unlikely to confuse their deliberations.  The trial court instructed the jury that all charges must be considered separate matters.  Therefore, since the record supports the contention that the

charges were "simple and direct," appellant cannot demonstrate that he was prejudiced by the failure to grant his motion to sever.

{¶ 19} Finally, the trial court was also correct in noting that the evidence produced at trial would have been admissible "other acts" evidence under Evid.R. 404. Appellant's prior acts were relevant to show appellant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). The "other acts" evidence introduced in this case would not have been prejudicial to the appellant since we have already agreed with the trial court's decision that the evidence was "simple and direct." *State v. McDonald*, 9th Dist. Medina No. 12CA0093-M, 2013-Ohio-4972, ¶ 32, citing *Lott*, 51 Ohio St.3d at 163 ("[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)").

{¶ 20} Accordingly, the trial court did not err in denying appellant's motion to sever. Appellant's fifth assignment of error is therefore overruled.

{¶ 21} Assignment of Error No. 6:

{¶ 22} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT BY ALLOWING [D.E.] TO TESTIFY.

{¶ 23} In his sixth assignment of error, appellant argues, in substance, that D.E. lacked the ability to adequately recollect impressions of fact. We disagree.

{¶ 24} Pursuant to Evid.R. 601, "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is the duty of the trial court to conduct an examination of a child less than ten years old to determine the child's competency to testify. *State v. Tillman*, 12th Dist. Butler No. CA2003-09-243, 2004-Ohio-6240, ¶ 8. In determining whether a child under ten years old is

competent to testify, the trial must take into consideration: "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *State v. Frazier*, 61 Ohio St.3d 247, 251 (1991).

{¶ 25} A child witness under ten years old may be competent to testify even though the child is unable to recollect all of the facts of a given situation. *State v. Fry,* 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 76. The child's answers must demonstrate that the child "can perceive and recall generally and understands the concept of truthfulness." *Id.* A trial court's finding that a child under the age of ten is competent to testify shall not be disturbed, absent an abuse of discretion. *Frazier* at 250-251; *State v. Goins*, 12th Dist. Butler No. CA2000-09-190, 2001 WL 1525298, *4 (Dec. 3, 2001). An abuse of discretion is more than an error of law or judgment, but instead connotes that "the trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 26} In this case, D.E. was eight years old at the time of the trial. To determine if D.E. was competent to testify, the trial court held a competency hearing before the start of trial. During the hearing, the trial court asked D.E. a number of questions related to her ability to recollect impressions and observations, and whether she knew the difference between truth and falsity. After concluding the hearing, and over appellant's objection, the trial court found that D.E. was competent to testify.

{¶ 27} Appellant argues that the trial court's decision permitting D.E. to testify was an abuse of discretion. In support, appellant cites to statements made by D.E. during both her competency hearing and her trial testimony. First, appellant argues that D.E. should not have been permitted to testify because, during the competency hearing, D.E. could not recall

what she had done the previous Monday or the name of the previous month. In addition, appellant also argues D.E. should not have been permitted to testify because: (1) she was unable to recall the type of clothing that appellant was wearing during the incident, (2) she was unable to recall all of the statements that she had given during prior police interviews, and (3) she was unable to identify the sound of her voice from a previously recorded interview with the police.

{¶ 28} Upon review, we find the trial court did not abuse its discretion when it permitted D.E. to testify. While it is true that D.E. had difficulty in answering some questions posed to her by defense counsel, she was able to answer most questions appropriately. D.E.'s testimony at the competency hearing indicated that she knew the difference between truth and falsity and that she understood that it was important to tell the truth. D.E. was also able to answer various other questions posed by the trial court, including the name of her school, what grade she was in, the weather, certain dates, and her house address. For example:

> THE COURT: What grade are you in?
>
> [D.E.]: Third.
>
> THE COURT: * * * What's your favorite subject in school?
>
> [D.E.]: Math.
>
> THE COURT: Math? Good for you. I was never any good at math, but I'm glad somebody is. What's your least favorite?
>
> [D.E.]: Science.
>
> THE COURT: Science, okay. If I was to tell you that your favorite subject in school is science, would that be a lie or that would [sic] be the truth?
>
> [D.E.]: A lie.
>
> THE COURT: Okay. If I was to tell you that it looks like it's [sic] really warm outside, let's go swimming out in the pool. Would I --
>
> [D.E.]: Lie.

THE COURT: -- be telling you a lie or the truth?

[D.E.]: Lie.

THE COURT: Okay. You understand how important it is to tell the truth?

[D.E.]: Yes.

THE COURT: And if you don't tell the truth, do you get punished?

[D.E.]: Yes, sir.

{¶ 29} We find the trial court heard sufficient testimony to declare D.E. competent to testify and, thus, did not abuse its discretion in permitting her to testify. *See, e.g., Tillman*, 2004-Ohio-6240, at ¶ 12 (trial court did not err in permitting a five-year-old victim to testify because "[a]lthough the victim had difficulty answering some questions, she answered most questions appropriately"); *see also State v. McNeill*, 83 Ohio St.3d 438, 443 (1998) (upholding a trial court's decision allowing two children to testify while acknowledging "[w]hile the children could not answer every question posed, the transcript indicates they were in fact able to receive, recollect, and communicate impressions of fact, and appreciate the responsibility to be truthful"). Accordingly, we overrule appellant's sixth assignment of error.

{¶ 30} Assignment of Error No. 3:

{¶ 31} DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO DETECTIVE HOOVER'S INADMISSIBLE HEARSAY AND CORROBORATION TESTIMONY.

{¶ 32} In his third assignment of error, appellant alleges that he received ineffective assistance of counsel because his trial counsel failed to object to the testimony of Detective Hoover. Appellant argues that the testimony of Detective Hoover, reciting certain statements made by D.E. and T.M. during the police investigation, constituted improper hearsay and

corroboration testimony. After a thorough review, we conclude that appellant has failed to establish a claim of ineffective assistance of counsel and overrule his assignment of error.

{¶ 33} "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's actions were outside the wide range of professionally competent assistance, and that prejudice resulted by reason of counsel's actions." *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Accordingly, counsel's performance will not be deemed ineffective unless (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) he was prejudiced by that deficient performance in that there is a reasonable probability that, but for his counsel's deficient performance, the outcome of his trial would have been different. *State v. Russell*, 12th Dist. Butler No. CA2012-08-156, 2013-Ohio-3079, ¶ 49, citing *Strickland* at 687. A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceeding." *State v. Scott*, 12th Dist. Warren No. CA2012-06-052, 2013-Ohio 2866, ¶ 16.

{¶ 34} The rule against hearsay provides that certain out-of-court statements are inadmissible at trial unless the statement falls under one of the exceptions to the rule. *State v. Penwell*, 12th Dist. Fayette No.CA2010-08-019, 2011-Ohio-2100, ¶ 11. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶ 35} The state contends that the statements made by both D.E. and T.M. to Detective Hoover are admissible under Evid.R. 801(D)(1)(b). Pursuant to Evid.R. 801(D)(1)(b) an out-of-court statement is not considered hearsay if "[t]he declarant testifies at trial * * * and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." *State v. Brown,* 12th

Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 16. The rule "permits the rehabilitation of a witness whose credibility has been attacked by an express or implied charge that he recently fabricated his story or falsified his testimony in response to improper motivation or undue influence." *Id.*; *State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, ¶ 102.

{¶ 36} In order for this rule to apply, "the declarant must be subject to cross-examination and the statement must be offered to rebut an accusation that the declarant lied or was improperly influenced in [their] testimony." *State v. Williams,* 12th Dist. Butler No. CA2007-04-087, 2008-Ohio-3729, ¶ 12. To be admissible, the prior consistent statement must have been made before the existence of any motive or influence to falsify testimony. *Brown* at ¶ 16; *Smith* at ¶ 103. "In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation." *Smith* at ¶ 103, citing *State v. Grays*, 12th Dist. Madison No. CA2001-02-007, 2001-Ohio-8679, *5.

**D.E.'s prior statements to Detective Hoover**

{¶ 37} During D.E.'s testimony, appellant's trial counsel repeatedly asked questions pertaining to D.E.'s memories of the events giving rise to the allegation of gross sexual imposition. Additionally, appellant's trial counsel asked about specific inconsistencies in prior statements that D.E. had made to police during the investigation. For example, appellant's trial counsel questioned D.E. about the sexual contact that appellant had with D.E.:

> Q. Do you remember telling a detective at Middletown Police Department that, "He just touched it?" Those were your words. Do you remember that?
>
> A. No, he didn't -- I didn't say that.

Appellant's trial counsel then played a portion of the videotaped recording of D.E.'s interview

- 11 -

with the Middletown Police Department to rebut D.E.'s testimony and impeach her credibility.

{¶ 38} Following the testimony of the three victims, the state called Detective Hoover to testify and asked whether D.E.'s statements during the police investigation had been consistent with D.E.'s trial testimony. Detective Hoover testified:

Q. Detective, in the course of your duties, did you interview [D.E.]?

A. I did.

* * *

Q. Okay. And you heard [D.E.] testify today?

A. That's correct.

Q. And did this -- did [D.E.] testify consistently with what she told you and Detective Shoemake?

A. Yes, ma'am.

Q. Could you tell us what [D.E.] said that was consistent with what she told you and Detective Shoemake?

A. She told us that she was laying down in a bed at the house on 1819 Sherman Avenue, that [appellant] came in the room where she was at and stuck his hand down the front of her pants -- to open her legs or spread her legs, and she wouldn't do that. He forced her legs open, and then continued to touch her -- what [s]he called -- her private parts.

{¶ 39} Appellant's trial counsel did not object to this testimony. On appeal, appellant argues that the statements made by Detective Hoover were inadmissible hearsay and were "elicited to imply a perverse and sexual nature" for appellant's conduct. We disagree.

{¶ 40} We find appellant's trial counsel was not ineffective for failing to object to the testimony of Detective Hoover concerning D.E.'s prior statements. Pursuant to Evid.R. 801(D)(1)(b) the state could introduce prior consistent statements in order to rebut the charge of recent fabrication. During D.E.'s cross-examination, appellant's trial counsel asked D.E. about a prior statement made to investigators, in which she stated "[h]e just touched it." That question related to the sexual activity at issue in the case and implied the recent fabrication

of D.E.'s account of the incident. Further, by playing the tape recording of D.E.'s interview with the police, appellant's trial counsel opened the door to the testimony of Detective Hoover, in which Detective Hoover recited D.E.'s prior consistent testimony.

{¶ 41} Because appellant is unable to show any deficient performance of counsel arising from counsel's failure to object to Detective Hoover's testimony concerning D.E.'s prior statements, appellant has failed to support his claim of ineffective assistance of counsel. As the Ohio Supreme Court has recognized "counsel is not deficient for failing to raise a meritless issue." *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, ¶ 117, citing *State v. Taylor*, 78 Ohio St.3d 15 (1997). Therefore, we overrule appellant's third assignment of error with respect to Detective Hoover's testimony concerning D.E.'s prior consistent statements.

### T.M.'s prior statements to Detective Hoover

{¶ 42} We reach a different conclusion with respect to the admissibility of Detective Hoover's testimony concerning T.M.'s prior statements. Like the cross-examination of D.E., appellant's trial counsel also questioned T.M.'s recollection of the events giving rise to the allegation of gross sexual imposition. However, unlike the cross-examination of D.E., appellant's trial counsel did not make an express or implied charge against T.M. of a recent fabrication. Appellant's trial counsel made only one reference to a prior interview between T.M. and the Middletown police.

> Q. Do you remember talking to someone from the Middletown Police Department?
>
> A. I don't know.
>
> Q. Okay. Do you remember talking with someone, a female from Children's Hospital, the Morrison Center?
>
> A. No, I don't remember.

After this line of inquiry, appellant's trial counsel did not expressly or impliedly charge that

T.M. fabricated her story, nor did counsel play any of the video recorded statements made by T.M. during the police investigation.

{¶ 43} Although appellant's trial counsel did not specifically question T.M. about any prior statements given to police during the investigation, Detective Hoover testified about statements made by T.M. during the course of the police investigation:

> Q. Okay. Likewise, did you have the interview -- opportunity to interview [T.M.] in this particular investigation?
>
> A. Yes, ma'am.
>
> Q. And you saw [T.M.] testify today?
>
> A. Yes, ma'am.
>
> Q. And did she testify consistently with what she told you in the interview?
>
> A. Yes, ma'am.
>
> Q. What did she tell you that was consistent with what she testified to today?
>
> A. She stated that she was laying down in the living room at 1411 Fairmont where she was living at the time. That he came into the living room where she was at and he stuck his hand in her pants as well.

Similar to Detective Hoover's testimony regarding D.E., appellant's trial counsel did not object to any of the questions made by the state. On appeal, appellant argues that the statements made by Detective Hoover concerning T.M. constituted inadmissible hearsay and were not admissible as a prior consistent statement under Evid.R. 801(D)(1)(b). We agree.

{¶ 44} Detective Hoover's testimony regarding T.M.'s prior statements made during the police investigation constituted improper hearsay. Appellant's trial counsel did not suggest that T.M. fabricated her testimony, either expressly or impliedly. *See, e.g., State v. Kane*, 1st Dist. Hamilton No. C-110629, 2012-Ohio-4044, ¶ 14 (implication that memory was the result of a dreamlike hallucination or a dramatic story made up by the victim was not considered

charge of recent fabrication). The only mention of T.M.'s prior statements relevant to Detective Hoover's testimony came when appellant's trial counsel asked T.M. if she "remember[ed] talking to someone from the Middletown Police Department?" T.M. responded that she did not remember the discussion.

{¶ 45} The mere failure of T.M. to remember the events surrounding an interview with police or hospital personnel, without anything further, does not rise to the level of implied fabrication. Accordingly, because there is no charge of recent fabrication, the testimony of Detective Hoover was not admissible under Evid.R. 801(D)(1)(b). Because no other hearsay exception applies, Detective Hoover's testimony concerning T.M.'s prior statements constituted inadmissible hearsay.

{¶ 46} Although the testimony provided by Detective Hoover concerning T.M.'s prior statements was objectionable, we find that appellant was not prejudiced by counsel's failure to object. This court has previously acknowledged, the "failure to make a sufficient showing on either the 'performance' or 'prejudice' prong of the Strickland standard will doom a defendant's ineffective assistance of counsel claim. *State v. Lahmann*, 12th Dist. Butler No. 2007-Ohio-1795, ¶ 11, quoting *Strickland*, 466 U.S. 668, at 697; *see also State v. McCoy*, 12th Dist. Warren No. CA2013-04-033, 2013-Ohio-4647, ¶ 21("an appellate court is not required to examine counsel's performance under the first prong of the *Strickland* test if an appellant fails to prove the second prong of prejudicial effect"). In demonstrating prejudice, appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *McCoy* at ¶ 21; *State v. Russell*, 12th Dist. Butler No. CA2012-08-156, 2013-Ohio-3079, ¶ 49.

{¶ 47} Based on our review of the record, we find that appellant did not receive ineffective assistance of counsel based on his trial counsel's failure to object to the testimony of Detective Hoover concerning T.M.'s prior statements because appellant failed to prove the

second prong of prejudicial effect under the *Strickland* test. Assuming that counsel should have objected to the testimony of Detective Hoover, counsel's deficiency constituted, at most, harmless error. *See Kane*, 2012-Ohio-4044 at ¶ 14; *see also State v. Trusty*, 1st Dist. Hamilton Nos. C-120378, C-120386, 2013-Ohio-3548, ¶ 50.

{¶ 48} In the present case, T.M. testified in court and was subject to cross-examination by appellant's trial counsel. The testimony provided by T.M. covered all of the elements necessary to sustain a conviction of gross sexual imposition. Detective Hoover's testimony concerning T.M.'s statements essentially reiterated the unrefuted testimony that was already provided by T.M. during her direct testimony. Further, unlike during D.E.'s testimony, T.M.'s credibility was not attacked on the basis of fabrication and T.M.'s testimony remained consistent. As this court has previously stated, "where a declarant is examined on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless." *State v. Tomlinson*, 33 Ohio App.3d 278, 281 (12th Dist. 1986); *State v. Noles*, 6th Dist. Lucas No. L-12-1310, 2013-Ohio-4088, ¶ 42; *Trusty* at ¶ 50. Thus, even if appellant's trial counsel should have objected to Detective Hoover's testimony, that failure does warrant reversal on the basis of ineffective assistance of counsel.

{¶ 49} We also note that the jury does not appear to have placed undue emphasis on Detective Hoover's testimony. For instance, the record reflects that the jury failed to convict appellant on a third charge of gross sexual imposition involving S.M. Similar to his testimony concerning the other victims, Detective Hoover testified that S.M.'s trial testimony had been consistent with S.M.'s prior police interviews. Detective Hoover also testified as to the specific allegations made by S.M. against appellant during that police interview. Despite Detective Hoover's testimony, the jury failed to convict appellant of the charge of gross sexual imposition involving S.M. Thus, while appellant argues that Detective Hoover's

testimony improperly "bolstered" the statements of T.M., the record demonstrates that the jury was able to separate each victim's testimony from Detective Hoover's testimony in reaching its verdict.

{¶ 50} Accordingly, appellant has failed to prove that, but for Detective Hoover's testimony concerning T.M.'s prior statements, the result of the trial would have been different. Detective Hoover's testimony does not undermine our confidence in the outcome of the proceeding. Detective Hoover's testimony concerning T.M. accounted for only a small portion of the trial and reiterated testimony that was already in evidence. Because appellant is unable to show any resulting prejudice from counsel's failure to object to Detective Hoover's testimony, he has failed to support his claim of ineffective assistance of counsel.

{¶ 51} Appellant's third assignment of error is overruled.

{¶ 52} Assignment of Error No. 4:

{¶ 53} DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE STATES CLOSING ARGUMENT SINCE THE STATE OF OHIO COMMITTED PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT.

{¶ 54} In his fourth assignment of error, appellant alleges he received ineffective assistance of counsel because his trial counsel failed to object to statements made by the state during closing argument. Appellant argues the state engaged in prejudicial misconduct during closing argument when the state referred to the victims as "throw away girls" and referenced the victims' status as poor and underprivileged. Since appellant's trial counsel did not object to these statements during closing argument, appellant contends that he received ineffective assistance of counsel. We disagree and overrule appellant's fourth assignment of error.

{¶ 55} The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A

court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 56, citing *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 32. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

{¶ 56} During its closing argument, the state mentioned that the three alleged victims were underprivileged and referred to them as "throw away girls." In essence, appellant argues that those references to the victims' poverty and family situations denied him a fair trial by inciting the passions of the jury. As support, appellant cites to portions of the following statements made by the state in closing argument:

> Perhaps more important than the purported discrepancies or inconsistencies is the very nature of the testimony itself and what that testimony tells us. You heard testimony yesterday from [D.E.] that her mother, in order to provide for the family, scraps. She explained that that's gathering copper, stripping it, and recycling it. You heard from [T.M.] that there was a time when her family lived in a homeless shelter.
>
> The evidence shows that we're dealing with children that are underprivileged. And that maybe as a result of that, maybe not, have suffered some educational deficits. [T.M.'s] in the fifth grade, and when I asked her what state she lived in, she hesitated and told me the United States.
>
> These pieces of evidence show us a pattern. And the pattern that they show us is that this Defendant purposely picked [D.E.], [T.M.] and [S.M.]. Why did he do that? Why didn't we have girls in here that were captains of the basketball team, cheerleaders, student body presidents, or had mothers that are presidents of the PTA?
>
> The State would suggest to you that the evidence shows that this

Defendant selected these girls because he viewed them as easy targets. Or in other words, kids that could be thrown away by society. And the State would suggest to you that the reason that that pattern of evidence is there is because the Defendant was banking on two things.

One, that they [the victims] would want [to] tell. And two, that if they did, nobody would believe them. He was wrong. They told. And the State would submit to you that when you weigh the credibility of these girls, when you look at those jury instructions, you will find that their testimony is worthy of your belief

* * *

Do you believe [D.E.]? Do you believe [T.M.]? Do you believe [S.M.]? Or do you believe that just -- these are three girls, throwaway girls, who are just making something up about this man that is the same in nature with no motive at all to lie.

{¶ 57} We conclude, after reviewing the record, that appellant's trial counsel was not ineffective for failing to object to those statements made by the state during closing argument. When taken in context, the statements clearly related to the victims' educational deficiencies and were mentioned by the state to rebut some of the perceived inconsistencies in the victims' testimonies. Additionally, the statements also reference a possible motivation that appellant had in selecting these particular girls for his sexual advances. It does not appear from the record that such statements inflamed the jury or tainted the verdict in any way. The fact that the jury failed to convict appellant on one of the charges would seem to counter appellant's argument.

{¶ 58} Finally, although certainly not dispositive, we note the trial court did instruct the jury that closing arguments of counsel were not evidence. We must presume that the jury followed the trial court's statements and, therefore, did not rely on the closing arguments in their deliberations. *Gray*, 2012-Ohio-4769, at ¶ 62; *Vanloan*, 2009-Ohio-4461, at ¶ 38. In conclusion, the record does not support a finding that the state committed prosecutorial misconduct, nor that the appellant was denied a fair trial.

{¶ 59} Based upon the foregoing, appellant is unable to support the notion that, had his counsel objected, the objection would have been sustained by the trial court. Because the comments were not objectionable, appellant's trial counsel was not ineffective for failing to object to those statements. *Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, at ¶ 117. As such, appellant's fourth assignment of error is overruled.

{¶ 60} Assignment of Error No. 1:

{¶ 61} THE STATE OF OHIO PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. ENGLISH OF GROSS SEXUAL IMPOSITION IN COUNT ONE AND TWO OF THE INDICTMENT.

{¶ 62} Assignment of Error No. 2:

{¶ 63} APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 64} Under his first and second assignments of error, appellant argues his convictions are based on insufficient evidence and against the manifest weight of the evidence. We disagree.

{¶ 65} "[W]hile a review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct concepts, a finding that a conviction is supported by the weight of the evidence will be dispositive of the issue of sufficiency." *State v. Brauer*, 12th Dist. Warren No. CA2012-11-109, 2013-Ohio-3319, ¶ 12; *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34; *Gray*, 2012-Ohio-4769, at ¶ 79. With that in mind, we first examine whether appellant's conviction is supported by the manifest weight of the evidence.

{¶ 66} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Gray* at ¶ 78. In determining whether a conviction is against the manifest weight of the

evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Brauer* at ¶ 13. "This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction." *State v. Hall,* 12th Dist. Butler No. CA2012-01-014, 2013-Ohio-4427, ¶ 28; *Gray* at ¶ 78.

{¶ 67} Appellant was convicted of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) for sexual contact occurring with both D.E. and T.M. The jury could not reach a verdict on the allegations raised by S.M. and the trial court declared a mistrial with respect to that count in the indictment. The charge of gross sexual imposition involving S.M. was later dismissed by the state.

{¶ 68} The crime of gross sexual imposition is defined under R.C. 2907.05 (A)(4) and provides:

> [n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

Sexual contact includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 69} While an essential element of the offense of gross sexual imposition is that the act is for the "purpose of sexual arousal or gratification" there is no requirement that there be direct testimony regarding sexual arousal or gratification. *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-062, ¶ 13. "Whether the touching was performed

for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. In making this determination, the trier of fact is permitted to infer what the defendant's motivation was in making the physical contact with the victim. *Meredith* at ¶ 13; *Williams* at ¶ 33.

{¶ 70} Count one of the indictment involved appellant's actions directed towards D.E. The state called D.E. to testify in its case-in-chief. During her testimony, D.E. stated that she was seven years old at the time of the incident and had never been married to appellant. D.E. recounted the day of the incident alleged in the indictment and stated that while she had been lying down in the back bedroom, appellant came into the room and touched her "private," which she described as the part of her body that pees.

{¶ 71} Count two of the indictment involved the appellant's actions directed towards T.M. During her testimony, T.M. stated that she was 11 years old at the time of the incident and had never been married to appellant. T.M. testified that, on the date of the incident, she was suddenly awakened from a nap when she felt a hand being pulled out from inside her pants. T.M. recounted for the jury that the hand had been touching her buttocks and clearly testified that appellant was the perpetrator.

{¶ 72} The record shows that the jury's verdict convicting appellant of two counts of gross sexual imposition was not against the manifest weight of the evidence. Both victims named appellant as the perpetrator and identified him during trial. D.E. and T.M both testified that they were under 13 years old at the time of the conduct and were not married to appellant. Both victims' respective testimony described the relevant incident in which an erogenous zone of their bodies had been touched. *See* R.C. 2907.01(B).

{¶ 73} While appellant is correct in asserting that the state must prove an offender

acted with the "purpose of sexual arousal or gratification" in order to be found guilty of gross sexual imposition, appellant fails to note that such a purpose may be inferred by the fact-finder. *Meredith*, 2005-Ohio-062 at ¶ 13; *Williams*, 2013-Ohio-3410 at ¶ 33. In this case, the jury could reasonably find, based on the victims' testimonies, that the touching was done for the purpose of sexual arousal or gratification.

{¶ 74} Based on the evidence presented at trial, we conclude the jury's verdict was not against the weight of the evidence and was therefore supported by sufficient evidence. Appellant's third and fourth assignments of error are overruled. This case came down to the credibility of the victims' testimonies. Although there were some inconsistencies in the victims' testimonies, the jury, as trier of fact, was in the best position to weigh the credibility of the witnesses. As such, the state presented sufficient evidence from which the jury could reasonably conclude that appellant was guilty of the charges of gross sexual imposition involving D.E. and T.M.

{¶ 75} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.